[No. 32854. Department Two. July 14, 1955.]

V. S. Jenkins Company, *Appellant*, v. Richard E. Hunton
*et al., Respondents.*[1]

*Lycette, Diamond & Sylvester* (*Herman Howe,* of counsel), for appellant.

*Caley & Armstrong,* for respondents.

Mallery, J.—The West Coast Heating & Plumbing Co., hereinafter called defendant, entered into a contract with the University of Washington to perform the mechanical work in the construction of the Fisheries Center Building.

Part of defendant's work was to provide two heat exchangers, one for cold salt water and one for warm salt water. There are several varieties of heat exchangers manufactured by different companies. In this project, however, it was necessary that the piping in the exchangers be made of pyrex glass, so that the chemical action that salt water has upon metals would not affect the fish. The plans and specifications in connection with defendant's contract designated that the exchangers be made by the Corning Glass Works, but did not give the physical size or detailed design of the Corning exchangers.

[1] Reported in 285 P. (2d) 1053.

Defendant wrote to the Corning Glass Works and obtained from it, by letter dated September 8, 1949, the exact lineal footage of piping in the heat exchangers requiring insulation coverage. A few days later, this letter was called to the attention of plaintiff's representatives, who were preparing bids for installing the insulation.

On September 19, 1949, plaintiff submitted its bid of $9,630 to do the insulation work, which defendant accepted on December 6, 1949. Plaintiff commenced the work, but did not finish it. The failure to do so was put upon the ground that all of the work that was shown to be necessary by the plans and specifications, had been done. Plaintiff claimed that the balance of the work necessary to complete the insulation of the cold salt-water heater exchanger was outside of the contract, and offered to do the extra work for the sum of $1,980.

Plaintiff contended that the plans and specifications called for one cold-water and for one hot-water heat exchangers, but that the installation, in fact, consisted of eight heat exchangers.

Defendant took the position that the engineers, at the time of preparing the plans and specifications, did not know the shape, size, or arrangements of the heat exchangers, and, therefore, had represented their location diagrammatically without detail as to the design. The actual details had to be obtained from the Corning Glass Works. This was the reason defendant had obtained this information from the Glass Works and made it available to plaintiff prior to the submission of its bid.

Defendant had the unfinished work completed by the Charles S. Brower Company at a price of $1,166, which was charged back to plaintiff, which should have finished the insulation.

This action was brought by plaintiff for the amount charged back and for the value of the work done that it claimed was extra.

The trial court held for defendant, and specifically found:

"That the plans and specifications for the performance of the work required to be done by the Plaintiff in the above

entitled case were in the nature of a 'performance require-
ment specification' insofar as the work to be performed on
the cold salt water heat exchangers was concerned, and that
such performance requirement specification necessitated any
person bidding such contract to obtain the information as
to the size of the cold salt water heat exchanger from the
manufacturer specified in the specifications, to-wit: Corning
Glass Company. That such information was obtained from
Corning Glass Company prior to the bidding by the Plaintiff
and such information was imparted by the Defendant, West
Coast Heating & Plumbing Co., to the Plaintiff, V. S. Jenkins
Co., prior to the bidding of this job by the Plaintiff."

The plaintiff appeals, and contends that the trial court
erred in making the finding set out above. Its position is
that the plans and specifications were specific and controlled,
and that appellant was not charged with the responsibility
of accomplishing any end result. This presents us with a
question of fact only.

Appellant relies on the description of the heat exchangers
as set forth in exhibit No. 5, division No. X, subd. I, of the
specifications, and on the drawings of the exchangers in
exhibit No. 6, sheets M-6 and M-11 of the plans.

Mr. Fox, respondent's estimator, on cross-examination,
testified:

"MR. ARMSTRONG: Now you are looking at a diagrammatic
now? THE WITNESS: It is just a diagrammatic, yes. Q. (By
Mr. Diamond) There are dimensions there? A. The dimen-
sions apply to the size of the pipe. Q. Well, look at any of
them you want to. Do you want to look at M-6? A. They
do not give any length. Q. Here is the one that the witness
has testified is to scale and will give you the length. You are
now looking at Sheet M-6 of Defendants' Exhibit 6. A. Well,
your scale gives an eighth of an inch to a foot, and there's
approximately two inches there. Q. Two inches. Which one
are you looking at? A. I am looking at the length there;
about an inch and a half. That would be 12 feet, approxi-
mately, in two banks—but it does not show how many verti-
cal stacks there is on it. Q. Does M-11 show you the number
of vertical stacks? A. Again that is just a diagrammatic
which means nothing; that is just drawn for size of pipe, not
for amount of coil. Q. Does it say anything here about its
being merely a picture and not what is to be constructed?

A. It says 'diagram of salt water system', which does not mean that that is given in length."

On redirect examination, Mr. Fox testified:

"Q. Would it be possible, Mr. Fox, to look at these plans here and determine the number of lineal feet in the salt water, the cold salt water exchanger, the number of lineal feet of pipe? A. No."

Mr. Bouillon, the engineer who prepared the mechanical plans, on cross-examination, testified:

"Q. Now, Mr. Bouillon, you point to Sheet M-6 of Plaintiff's Exhibit 6, but that doesn't show the detail on the exchangers, does it? A. There is no, nothing on the drawing that shows any detail. Q. Well, would you answer my question: M-6 doesn't show the detail with reference to the heat exchangers, does it? A. No. Q. Now, why don't you refer us to Sheet M-11 with reference to the heat exchangers? Doesn't that sheet show the heat exchangers? A. No, that Sheet M-11 shows the piping connections to the heat exchangers. That is diagrammatic. Q. Well, you say it is diagrammatic. Where on the sheet does it say that it is diagrammatic? A. In the title. Q. In the title it says what? Diagrams? A. Diagrams. Q. Oh, all right. Now, on Sheet M-11—A. (Interposing) Diagrams are used for sizing piping; not for sizing anything else."

■ We think the absence of definite specifications in the exhibits relied upon by appellant, plus the fact that the Corning Glass Works' specifications were furnished to the appellant's representatives before appellant's bid was submitted, constitutes an ample support for the trial court's finding of fact upon which this appeal is predicated.

The judgment is affirmed.

HAMLEY, C. J., HILL, WEAVER, and ROSELLINI, JJ., concur.